J-S82027-18

2019 PA Super 188

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KENNETH MILLER, | : | |
| | : | |
| Appellant | : | No. 338 EDA 2017 |

Appeal from the PCRA Order January 12, 2017
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0902382-1998

BEFORE:    LAZARUS, J., OLSON, J. and STRASSBURGER, J.*

OPINION BY STRASSBURGER, J.:    **FILED JUNE 11, 2019**

Kenneth Miller (Appellant) appeals from the January 12, 2017 order granting in part and denying in part his first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Upon review, we affirm.

We provide the following background.

> Charles Love, Esq. (Love), represented [Appellant's] uncle, Gregory Miller (Gregory) on various matters, and successfully obtained money for Gregory as the result of a variety of civil claims. … However, Love could not distribute the entire sum to Gregory because of outstanding support orders and child support arrearages.
>
> On the morning of February 25, 1998, [Appellant] and Marcus Lloyd (Lloyd) met Herbert Blakeney (Blakeney) at Blakeney's house, at which time the three traveled to Gregory's home. During the ensuing conversation, Gregory spoke to the others about robbing Love at his office at 1006 Spruce Street in Philadelphia, and mentioned that anyone present at the office might have to be shot. According to the original plan, as devised

*Retired Senior Judge assigned to the Superior Court.

by Gregory and as testified to by Blakeney, [Appellant] was to be the shooter and Lloyd was to tie up the victims while Blakeney acted as a lookout. Gregory gave [Appellant] a handgun and told Blakeney to go to Love's office, get a check for [$10,000] from [Love], and give the check to Lloyd; Gregory instructed Lloyd to take the check to the bank and cash it. Gregory did not accompany [Appellant], Blakeney, and Lloyd to Love's office, but before they left for the office, Gregory told the three that the victims would have to be killed and to "leave no witnesses."

En route, [Appellant], Blakeney, and Lloyd took turns carrying the weapon, but Blakeney ended up with it when they reached Love's office. Brian Barry (Barry), a paralegal, opened the office door, whereupon [Appellant], Blakeney, and Lloyd entered and Blakeney brandished the gun. Blakeney then told Love to write out a check for [$10,000] while Lloyd tied up Barry. Lloyd departed to cash the check at the bank. Remaining at Love's office, [Appellant] and Blakeney passed the gun back-and-forth to each other.

Lloyd was unable to cash the check because he had insufficient identification, so he returned to Love's office and said to Love, "[y]ou know you is [*sic*] a dead mother f***er now." [Appellant] then handed the gun to Blakeney and exclaimed that Blakeney "was a b**** ass n***er if [he didn't] kill the mother f***ers." Blakeney then confronted the victims in the back storage room of Love's office and shot each of them in the head. Blakeney took [$1,500] from Love's person, and then [Appellant], Blakeney, and Lloyd fled the scene. The three parted ways temporarily. They later met at Blakeney's house, agreed to split the [$1,500] "proceeds" among the three of them, and further agreed to tell Gregory that they did not obtain any money because they could not cash the check.

At approximately 12:00 p.m. on that day, February 25, 1998, one of Love's clients flagged down a police officer at 10th and Spruce Streets and informed the officer that her attorney was in need of an ambulance. The officer entered the law office and saw the bodies of Love and Barry lying face down on the floor of the storage closet, with gunshot wounds to the back of their heads. Love's desk ledger contained an entry made that day indicating that he had written a check for [$10,000]. The police officer

- 2 -

noticed two .38 caliber shell casings on the floor. Both bullets were later recovered from the victims by the medical examiner.

[Eventually, Appellant, Lloyd, Blakeney, and Gregory were arrested in connection with this crime and charged with, *inter alia*, murder.]

The trial court conducted a jury trial for [] three defendants, [Appellant], Lloyd, and Gregory, … from September 16, 1999, until September 29, 1999. Blakeney entered into a negotiated plea agreement, at which time he pl[eaded] guilty to two counts of murder in the first degree and received two concurrent life sentences, in exchange for his testimony regarding the roles of [Appellant], Lloyd, Gregory, and himself in the chain of events leading to the deaths of Love and Barry.

*Commonwealth v. Miller*, 819 A.2d 504, 507-08 (Pa. 2002) (footnote and citations to notes of testimony omitted).

At the conclusion of the trial, Appellant was convicted of two counts of first-degree murder, and one count each of robbery and criminal conspiracy. The trial court sentenced Appellant to death on each murder conviction after the jury found the existence of two aggravating circumstances, which outweighed the lone mitigating circumstance. On direct appeal, our Supreme Court affirmed. *Miller*, 819 A.2d 504. On October 6, 2003, the United States Supreme Court denied Appellant's petition for a writ of *certiorari*. *Miller v. Pennsylvania*, 540 U.S. 827 (2003).

On January 21, 2004, Appellant *pro se* timely filed the instant PCRA petition. On October 29, 2008, through counsel, Appellant amended his petition, raising eight claims of penalty-phase error and seven claims of guilt-phase error.

On May 13, 2014, the PCRA court granted Appellant penalty-phase relief by vacating his death sentences and imposing a sentence of life imprisonment without the possibility of parole (LWOP) on each murder conviction. The Commonwealth conceded to the granting of this relief and imposing of the amended sentence. *See* Commonwealth's Supplemental Motion to Dismiss, 4/17/2014, at 1.

On May 13-15, 2014, the PCRA court conducted an evidentiary hearing on some of Appellant's guilt-phase claims. The following individuals testified: Daniel Martell, forensic psychologist; Thomas W. Moore, Jr., Esquire, Appellant's trial counsel; Robert Durison, Director of the Classification Movement and Registration Division of the Philadelphia Prison System; and Joseph J. Mariano, Esquire, Appellant's direct appeal counsel. The PCRA court denied relief on Appellant's guilt-phase claims on January 13, 2017.[1]

---

[1] The docket indicates several continuances were granted throughout Appellant's PCRA proceedings. However, that does not excuse the nearly 13 years it took to resolve Appellant's January 21, 2004 PCRA petition. Our Supreme Court has made clear that "[t]he PCRA court [has] the ability and responsibility to manage its docket and caseload and thus has an essential role in ensuring the timely resolution of PCRA matters." *Commonwealth v. Renchenski*, 52 A.3d 251, 260 (Pa. 2012) (citing *Commonwealth v. Porter*, 35 A.3d 4, 24–25 (Pa. 2012) ("[T]he court, not counsel, controls the scope, timing and pace of the proceedings below.")). Additionally, "post-conviction counsel must 'act expeditiously so as to reduce unnecessary delays and ensure the efficient administration of justice.'" *Id.* (citing *Commonwealth v. Sneed*, 45 A.3d 1096, 1104 n.11 (Pa. 2012)).

This timely-filed appeal followed. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925. On appeal, Appellant raises seven issues for our review. Appellant's Brief at 1-2.

I.

Before reaching the merits of Appellant's claims, we address whether this Court or our Supreme Court has jurisdiction over this appeal. This Court has "exclusive jurisdiction of all appeals from final orders of the courts of common pleas … except such classes of appeals as are by any provision of this chapter within the exclusive jurisdiction of the Supreme Court or the Commonwealth Court." 42 Pa.C.S. § 742. Our Supreme Court has exclusive jurisdiction of appeals from final orders of the courts of common pleas in, *inter alia*, automatic review of sentences as provided by 42 Pa.C.S. § 9546(d) (providing that in the PCRA context, "[a] final court order … in a case in which the death penalty has been imposed shall be directly appealable only to the Supreme Court"). 42 Pa.C.S. § 722(4).

In this case, while the death penalty had been imposed in the past, as part of Appellant's PCRA relief, the death penalty was vacated and replaced with two LWOP sentences. Thus, our jurisdictional analysis turns on whether a PCRA order granting penalty-phase relief and resentencing a defendant to a non-death sentence, but denying guilt-phase relief, qualifies as a PCRA case in which the death penalty has been imposed for purposes of subsection 9546(d). If such an order falls within the scope of subsection

9546(d), it must be appealed directly to our Supreme Court. However, if it falls outside the scope of subsection 9546(d), this Court has jurisdiction to entertain the appeal.

We begin with an analysis of subsection 9546(d), the relevant jurisdictional provision. When this Court interprets a statute, we do so mindful of the following principles.

> [O]ur objective is to ascertain and effectuate the intention of the General Assembly[,] and that [e]very statute shall be construed, if possible, to give effect to all of its provisions. This Court may not ignore the language of a statute, nor may we deem any language to be superfluous. Governing presumptions include that the General Assembly intended the entire statute at issue to be effective and certain, and that the General Assembly did not intend an absurd result.

*Bayview Loan Servicing, LLC v. Lindsay*, 185 A.3d 307, 312 (Pa. Super. 2018) (citations and quotation marks omitted). "In reading the plain language, '[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage[.]'" *Gross v. Nova Chemicals Servs., Inc.*, 161 A.3d 257, 264 (Pa. Super. 2017) (quoting 1 Pa.C.S. § 1903(a)).

Thus, we consider first the plain language of subsection 9546(d): "A final court order under this subchapter in a case in which the death penalty **has been** imposed shall be directly appealable only to the Supreme Court pursuant to its rules." 42 Pa.C.S. § 9546(d) (emphasis added). Grammatically, the verb "has been" is used when a condition was imposed in

- 6 -

the past and continues to be imposed in the present. Contrarily, in Appellant's case, the death penalty **had been** imposed in the past, but does not continue to be imposed at the present time. Thus, the plain language of subsection 9546(d) indicates that a death sentence must remain a potential sentence at the time of the appeal in order for the Supreme Court to possess exclusive jurisdiction over a PCRA appeal. The relevant case law supports this conclusion.

In **Commonwealth v. Bryant**, 780 A.2d 646 (Pa. 2001), the PCRA court had granted penalty-phase relief in the form of a new penalty hearing, but denied guilt-phase relief. Our Supreme Court held that it had exclusive jurisdiction over that appeal because the "legislature [does] not require that the sentence of death actually be pending in order for th[e Supreme] Court to have jurisdiction." **Id.** at 648. Importantly, a death sentence remained a possibility because Bryant still could have been sentenced to death following his new penalty phase hearing. **See Commonwealth v. Rompilla**, 983 A.2d 1207, 1211 (Pa. 2009) (distinguishing **Bryant** because it was a PCRA appeal where a new penalty-phase hearing was pending "and the prospect of a sentence of death remained").

That is not the case here. Appellant is not awaiting a new sentencing hearing. Appellant has already been resentenced to LWOP. No party has appealed this new sentence. As such, not only is a death sentence not currently pending, it has been eliminated as a potential sentence. In other

words, there simply is no current or potential death sentence applicable here.

Moreover, in **Rompilla**, our Supreme Court clarified that although the death penalty had been imposed in the past, once it is vacated and replaced with a LWOP sentence, our Supreme Court no longer has exclusive jurisdiction over such a case.

> The statutory reference [in 42 Pa.C.S. § 9711(h)(1)] to a "sentence of death," which vests jurisdiction in th[e Supreme] Court, plainly does not encompass cases in which the death penalty was imposed at one time but subsequently was vacated and a judgment of sentence of life imprisonment was imposed. The sentence in this case is life imprisonment, not death. Our capital appeal jurisdiction simply does not exist for a defendant such as appellant who is actually unaggrieved by the murder sentence below, and who seeks to litigate collateral complaints when the life/death outcome could not have been better for him.

983 A.2d at 1211.

We are cognizant that **Rompilla** involved the interpretation of 42 Pa.C.S. § 9711(h), not subsection 9546(d). However, we find its sound reasoning applicable here. Appellant is not facing a sentence of death. Once he was resentenced to LWOP, his appeal was no longer within the exclusive jurisdiction of our Supreme Court. **See Rompilla**, 983 A.2d at 1211 ("The sentence under review here is life imprisonment; jurisdiction over the appeal lies in the Superior Court."); **see also Commonwealth v. Kindler**, 147 A.3d 890, 893 (Pa. 2016) (noting that subsection 9546(d) empowers our Supreme Court with exclusive jurisdiction "of appeals from

final orders entered in PCRA proceedings where the petitioner faces a sentence of death"). This Court is more than qualified to handle this PCRA appeal of two LWOP sentences in the first instance, and we find no precedent compelling us to transfer this case to our Supreme Court.

Satisfied that we have jurisdiction over this appeal, we now proceed to the merits of Appellant's claims.

II.

On review of orders denying PCRA relief, our standard is to determine whether the PCRA court's ruling is free of legal error and supported by the record. *Commonwealth v. Orlando,* 156 A.3d 1274, 1280 (Pa. Super. 2017) (citation omitted). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." *Commonwealth v. Roney*, 79 A.3d 595, 603 (Pa. 2013) (citation omitted).

Because some of Appellant's claims allege that the PCRA court erred in denying his petition without first holding an evidentiary hearing, we also keep the following in mind.

> [T]he right to an evidentiary hearing on a post-conviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of

material fact in controversy and in denying relief without conducting an evidentiary hearing.

*Commonwealth v. Walls*, 993 A.2d 289, 295 (Pa. Super. 2010) (citations omitted). "Thus, to obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." *Commonwealth v. D'Amato*, 856 A.2d 806, 820 (Pa. 2004). *See also Commonwealth v. Paddy*, 15 A.3d 431, 467 (Pa. 2011).

A.

In Appellant's first claim, he argues that the PCRA court erred in dismissing his claim that the Commonwealth had committed a violation pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963),[2] by failing to disclose evidence calling into question the credibility of the key Commonwealth witness and Appellant's co-conspirator, Blakeney. Appellant's Brief at 15.

We set forth the following with respect to a *Brady* claim:

Under *Brady*[] and subsequent decisional law, a prosecutor has an obligation to disclose all exculpatory information material to the guilt or punishment of an accused, including evidence of an impeachment nature. To establish a *Brady* violation, an appellant must prove three elements: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the

---

[2] A *Brady* claim is cognizable under the PCRA. *See Commonwealth v. Simpson*, 66 A.3d 253, 264 n.16 (Pa. 2013) (citation omitted).

- 10 -

prosecution, either willfully or inadvertently; and (3) prejudice ensued.

***Commonwealth v. Spotz***, 47 A.3d 63, 84 (Pa. 2012).

Specifically, Appellant alleges that the Commonwealth committed a ***Brady*** violation by withholding evidence that Blakeney was mentally ill. Appellant's Brief at 15-16. According to Appellant, the Commonwealth withheld Blakeney's plea colloquy and various medical records that detailed Blakeney's mental illnesses. Amended PCRA Petition, 10/29/2008, at 124-29. On appeal, Appellant claims that Blakeney's credibility could have been challenged had Attorney Moore been aware of Blakeney's "psychotic episodes, blackouts, command hallucinations, head injuries, lead poisoning, rage attacks, manipulativeness, learning disabilities, and [use of] psychotropic drugs[.]" Appellant's Brief at 20.

We consider this claim mindful of the following.

> When a witness suffers from a mental disability relevant to his or her ability to accurately observe, recall or report events, the jury must be informed of the disability in order to assist it in properly assessing the weight and credibility of the witness's testimony. The evidence can be said to affect credibility when it shows that the witness's mental disorganization impaired his or her capacity to observe an event at the time of its occurrence, to maintain a clear recollection of it, or to communicate the observation accurately and truthfully at trial.

***Commonwealth v. Davido***, 106 A.3d 611, 637 (Pa. 2014) (citations omitted).

Blakeney's Plea Record

By way of background, Blakeney pleaded guilty *in camera* on July 16, 1998. At the conclusion of his plea, the plea court sealed Blakeney's record. Following Appellant's jury trial, the trial court issued a separation order for Blakeney to be kept separate from Lloyd, Appellant, and Gregory while incarcerated. Separation Order, 10/26/1999. Blakeney's plea record remained sealed until the PCRA court ordered its production for inspection by PCRA counsel and the Commonwealth pursuant to the instant PCRA petition.[3] Order, 11/29/2006.

On appeal, Appellant contends that Blakeney's plea record was material under **Brady** as mental health impeachment evidence of a vital Commonwealth witness. Appellant's Brief at 21. Additionally, Appellant claims that the Commonwealth requested that Blakeney's record be sealed at the conclusion of his plea, and therefore the Commonwealth cannot now

---

[3] Blakeney's plea transcript is not included in the certified record. We note that Appellant filed an appendix to his amended PCRA petition, and the index to that appendix indicates that this transcript may have been included in the record below. **See** Appendix and Certification of Witnesses to Amended PCRA Petition and Writ of *Habeas Corpus*, 12/3/2009, at 2 (unnumbered). As discussed in detail *infra*, if the transcript was included in the appendix in the record below, it was not transmitted to this Court on appeal. However, because the transcript's absence does not hinder our review, we do not find this claim waived. **See Commonwealth v. Houck**, 102 A.3d 443, 456 (Pa. Super. 2014) (citation omitted) (noting that an appellant's failure to ensure the inclusion of any necessary transcript in the certified record renders any claim that cannot be resolved in the absence of that transcript waived).

hide behind its sealing to claim that it did not have access to Blakeney's plea record. *Id.* at 21-22.

At Appellant's PCRA hearing, Attorney Moore, Appellant's trial counsel, testified that the Commonwealth did not disclose Blakeney's plea record to him as part of discovery in Appellant's trial. N.T., 5/14/2014, at 14-15. However, the PCRA court dismissed Appellant's *Brady* claim because he failed to prove that the Commonwealth possessed Blakeney's plea record, and thus no *Brady* violation occurred. Trial Court Opinion, 1/18/2018, at 10.

Appellant's claim assumes that evidence of Blakeney's mental health at the time of his plea would have constituted admissible impeachment evidence at Appellant's trial. However, "[o]nly mental health disabilities that impair a witness's ability to observe, recall, or report events, are relevant and admissible to impeach a witness's credibility." *Davido*, 106 A.3d at 637 (citation omitted). The only condition cited by Appellant that could potentially be used to impeach Blakeney's ability to recall events would be Blakeney's purported blackouts. But upon closer inspection, Blakeney's statement about blackouts during his plea proceeding, as read by Martell, the forensic psychologist, at the PCRA hearing, was that Blakeney suffered blackouts when frustrated or after getting hit. N.T., 5/13/2014, at 47. There is no indication that either triggering event occurred during the course of this robbery and murder. Therefore, we find that Appellant has not

established that such impeachable evidence existed, and thus the Commonwealth had no obligation under **Brady** to seek the unsealing of Blakeney's plea record. Accordingly, the PCRA court did not err in denying Appellant's **Brady** claim regarding Blakeney's plea record.

Blakeney's Mental Health Records

Separately, Appellant claims that the Commonwealth failed to disclose Blakeney's mental health records. On appeal, Appellant contends that these records were material under **Brady** as mental health impeachment evidence of a vital Commonwealth witness. Appellant's Brief at 21.

At Appellant's PCRA hearing, Attorney Moore testified that the Commonwealth did not disclose Blakeney's mental health records to him as part of discovery in Appellant's trial. N.T., 5/14/2014, at 14-15. However, the PCRA court dismissed Appellant's **Brady** claim because he failed to prove that the Commonwealth possessed the referenced medical records, and thus no **Brady** violation occurred. Trial Court Opinion, 1/18/2018, at 10.

Again, Appellant has not established that there was anything impeachable in Blakeney's mental health records. **See Davido, supra**. In one mental health record, as relayed by Martell at the PCRA hearing, Blakeney had explosive rage reactions, which involved seeing red beforehand and not remembering what occurred afterwards. N.T., 5/13/2014, at 81-82. As with Blakeney's plea statement, this statement does not undermine Blakeney's trial testimony of what occurred during the

robbery and murder. There is no indication that a blackout would have occurred during the robbery and murder, affecting his ability to perceive the events and recall them at Appellant's trial. Even if this evidence constituted impeachment evidence, our review of the record supports the PCRA court's finding that the Commonwealth did not have the medical records in its possession at the time of Appellant's trial. Because the Commonwealth did not possess the evidence, it could not suppress the evidence, willfully or inadvertently. Accordingly, the PCRA court did not err in denying Appellant's **Brady** claim.

B.

Appellant next argues that the PCRA court erred in dismissing his layered ineffective-assistance-of-counsel claim that Attorneys Moore and Mariano were ineffective for "failing to request a more probing inquiry of the coercion [of one juror into voting guilty, and another juror who improperly consulted his minister for advice on the verdict and prayed with other jurors,] and failing to raise and preserve these issues." Appellant's Brief at 24.

We use the following standard to evaluate ineffective assistance of counsel claims.

> It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction

- 15 -

> lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.
>
> The PCRA court may deny an ineffectiveness claim if the petitioner's evidence fails to meet a single one of these prongs. Moreover, a PCRA petitioner bears the burden of demonstrating counsel's ineffectiveness.

*Commonwealth v. Franklin*, 990 A.2d 795, 797 (Pa. Super. 2010) (internal citations omitted).

By way of background, the jury began deliberating at 11:38 a.m. on September 24, 1999. N.T., 9/24/1999, at 62. The jurors were dismissed for the weekend, and scheduled to report back to continue deliberations at 9:00 a.m. on Monday, September 27, 1999. *Id.* at 70. That Monday, the trial court notified the parties that Juror 11 privately reported to a court officer that she felt pressured and wanted to change her vote. N.T., 9/27/1999, at 10. Upon inquiry, the court officer indicated that at approximately 8:30 a.m., Juror 11 approached him in the hallway, outside the presence of the other jurors, and asked him whether she could change her vote on something she did Friday. He told her that she could do so because nothing was official yet. *Id.* at 12-13. Separately, the court received a written jury question about conspiracy at 9:40 a.m. that day. *Id.* at 11-12.

Based on this, the Commonwealth believed that further deliberations had resolved the problem, and asked that the court instruct the jury that the verdict is not final until it is recorded in open court. *Id.* at 13. Appellant's

trial counsel found that remedy satisfactory and did not request any additional relief. *Id.* at 13-14. After responding to the jury's written question about conspiracy, the court provided the following additional instruction: "I also want to remind you that no determination or verdict is final until the jury as a whole returns a unanimous verdict in open court and it is recorded." *Id.* at 16. Following a full day of deliberations, the jury was again dismissed for the evening, to report on Tuesday, September 28, 1999. *Id.* at 20. The jury reached a final verdict on Wednesday, September 29, 1999.

In his amended PCRA petition, Appellant cited to and quoted PCRA witness certifications obtained at some point after the verdict from Juror 11 and Juror 9 in support of Appellant's claim that Juror 11 was coerced into voting guilty. Amended PCRA Petition, 10/29/2008, at 188-89.[4]

---

[4] After a thorough review of the record, we have determined that the Appendix and Certification of Witnesses for Appellant's Amended PCRA Petition does not contain these certifications. In fact, that document comprises only four pages: a cover page, a partial index (listing items 42-59), and two pages consisting of the affidavit/declaration of Kenneth Ruffin, Appellant's father. *See* Appendix and Certification of Witnesses to Amended PCRA Petition and Writ of *Habeas Corpus*, 12/3/2009.

> This Court cannot meaningfully review claims raised on appeal unless we are provided with a full and complete certified record. This requirement is not a mere "technicality" nor is this a question of whether we are empowered to complain *sua sponte* of *lacunae* in the record. In the absence of an adequate certified record, there is no support for an appellant's arguments and, thus, there is no basis on which relief could be granted.

*(Footnote Continued Next Page)*

J-S82027-18

*(Footnote Continued)* ——————————————

***Commonwealth v. Preston***, 904 A.2d 1, 7 (Pa. Super. 2006) (*en banc*) (some citations omitted).

> In the absence of specific indicators that a relevant document exists but was inadvertently omitted from the certified record, it is not incumbent upon this Court to expend time, effort and manpower scouting around judicial chambers or the various prothonotaries' offices of the courts of common pleas for the purpose of unearthing transcripts, exhibits, letters, writs or PCRA petitions that well may have been presented to the trial court but never were formally introduced and made part of the certified record. If, however, a copy of a document has been placed into the reproduced record, or if notes of testimony are cited specifically by the parties or are listed in the record inventory certified to this Court, then we have reason to believe that such evidence exists. In this type of situation, we might well make an informal inquiry to see if there was an error in transmitting the certified record to this Court. We might also formally remand the matter to the trial court to ascertain whether notes of testimony or other documentation can be located and transmitted. If a remand is necessary, it is appropriate to direct the trial court to determine why the necessary documentation was omitted from the certified record. An appellant should not be denied appellate review if the failure to transmit the entire record was caused by an 'extraordinary breakdown in the judicial process.' However, if the appellant caused a delay or other problems in transmitting the certified record, then he or she is not entitled to relief and the judgment of the court below should be affirmed.

***Id.*** at 7–8 (citations omitted).

We undertook efforts to inquire with our prothonotary's office to determine whether there was an error in transmitting the certified record on appeal, and learned that the clerk only received the four pages outlined *supra*. We note, however, that both Appellant and the Commonwealth cited and quoted the witness certifications in writings to the PCRA court and this Court. Moreover, the record indicates that the certifications existed within the appendix, but were not transmitted. Because there is no evidence that
*(Footnote Continued Next Page)*

Juror 11's certification is reproduced as follows.

> The other jurors were really pressuring me.
>
> They kept saying "let's get it over with." They made me feel that I wasn't allowed to have my own opinion. I was the youngest one there. I held out as long as I could, but they yelled at me and called me names and made me feel like I was responsible for them not being able to go home.
>
> They kept saying, "we're not having a hung jury. We're not having spent all this time here so that you can screw it up for the rest of us." They pressured me like crazy. I think I spent half my time in the jury room crying. I kept saying, "[Appellant's] not guilty and I'm not going to be responsible for what happens to him." Finally, I just caved under the pressure. I felt awful.

Certification of Witnesses, [Juror 11].

Amended PCRA Petition, 10/29/2008, at 188-89. ***See also*** Motion to Dismiss, 6/29/2010, at 125 n.54 (discussing and quoting portions of certification with citation to appendix); Appellant's Brief at 27 (quoting a portion).

According to Appellant, Juror 9's certification supports his allegation of coercion of Juror 11.

> I remember that there was a big argument in the jury room. We could not agree on who was actually guilty of the crime. There were opinions in all

*(Footnote Continued)* ———————————

Appellant caused the problem in transmitting the record, and because Appellant seemingly quotes the certifications in their entirety in his amended PCRA petition, in the interest of judicial economy, we will review Appellant's claim as if the quoted certifications were part of the certified record.

> directions and we were a hung jury for a long time. The biggest hold out was this young black girl. We argued against her and she finally caved in. I remember that the jury deliberated forever. We wanted to go home. We weren't going home if we didn't agree with her or get her to agree with us. They were going to sequester us.
>
> I was probably a bully during the deliberation. I was the voice of reality. My mom worked for the Orphan's Court and I have been to many trials in the past. I also used to work for the probation office. I am really familiar with criminals and the way people act. So I had an advantage over the other jurors because I understood how these young boys think and where they were coming from.

Certification of Witnesses, [Juror 9].

Amended PCRA Petition, 10/29/2008, at 189. **_See also_** Motion to Dismiss, 6/29/2010, at 125 n.54 (discussing and quoting portions of certification with citation to appendix); Appellant's Brief at 28 (quoting a portion).

Separately, Appellant cited to and quoted another portion of Juror 9's PCRA witness certification in support of his claim that Appellant was denied a fair trial because Juror 9 prayed with other jurors and sought guidance from his minister during the deliberations.

> I am a Christian and I had to pray over my decision. I prayed with several others in the jury room. I also had to talk to my pastor about this. I went to him before I made my final decision. I was so confused. I asked him, "can I convict a man to death and not be guilty of murder myself." We didn't talk about the specific crime, but I was concerned about doing something un-Christian. He gave me the guidance and the strength to make my decision. He said "render unto Caesar that which is Caesar[']s and render unto God that which is God's."

*See* Affidavit of [Juror 9].

Amended PCRA Petition, 10/29/2008, at 191. *See also* Motion to Dismiss, 6/29/2010, at 129-30 (discussing and quoting portions of certification without citation to appendix).

In its order denying Appellant an evidentiary hearing on this claim, the PCRA court found this issue was waived and meritless on its face. Order, 6/8/2012, at 2 (unnumbered).

Preliminarily, we note that Appellant's direct appeal predated *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002), where our Supreme Court held that, as a general rule, claims of ineffective assistance of counsel should not be raised until collateral review, overruling prior case law permitting review of such claims in the first instance on direct appeal. As such, Appellant was required to raise any ineffective assistance of trial counsel claims in that appeal, including the instant claim that Attorney Moore was ineffective for failing to investigate Juror 9 and Juror 11, or preserve the issue regarding Juror 11's communication to the trial court. Though Appellant raised several claims of ineffective assistance of trial counsel in his direct appeal, he did not raise this claim. *See Miller*, 819 A.2d at 516 n.12, 517-19. Therefore, the PCRA court did not err in finding Appellant's claim waived as to Attorney Moore. *See* 42 Pa.C.S. § 9544(b) ("[A]n issue is waived if the petitioner could have raised it but failed to do so

before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding.").

However, even if not waived, we agree with the PCRA court that the claim, as to both Attorneys Moore and Mariano, is meritless on its face.

> It is a general rule of law that a juror may not impeach the jury's verdict after the jury has been discharged, though an exception to this rule is made in situations where the jury was exposed to an *ex parte* influence which possesses a reasonable likelihood of prejudice. Although they may testify to the existence of an outside influence, jurors are prohibited "from testifying as to the effect which these extra-evidentiary influences had upon the jurors in reaching a decision," just as jurors are prohibited from recounting the mental processes by which they arrived at their verdict. Additionally, we reiterate, this Court long ago noted that interviewing jurors after a verdict and obtaining from them *ex parte*, unsworn statements in answer to undisclosed questions and representations by the interviewers is highly unethical and improper and was long ago condemned by this [C]ourt.

*Commonwealth v. Tedford*, 960 A.2d 1, 39 (Pa. 2008) (citations and quotation marks omitted).

Instantly, without determining whether the underlying claims have merit, we find that both Attorney Moore and Attorney Mariano had an objectively reasonable basis for not interviewing Jurors 9 and 11 after the verdict. As to Juror 11's alleged coercion, Attorney Moore was satisfied with the Court's instruction and handling of the matter. Based upon our review of the record, we find Attorney Moore's decision in that regard to have an objectively reasonable basis. Therefore, Attorney Mariano will not be deemed ineffective for failing to raise a meritless claim of trial counsel

ineffectiveness in that regard. ***See Commonwealth v. Spotz***, 896 A.2d 1191, 1211 (Pa. 2006) (finding that "counsel will not be deemed ineffective for failing to raise a meritless claim").

As to Juror 9, there is no evidence of record that Attorney Moore or Attorney Mariano knew that Juror 9 was praying with other jurors or that he consulted his minister for advice on whether serving as a juror in a death penalty case was inconsistent with his Christian beliefs. Our Supreme Court has made clear that attorneys "do not have a recognized duty to interview jurors in the hopes of uncovering a collateral claim by which to undo the verdict." ***Tedford***, 960 A.2d at 40. Accordingly, the PCRA court did not err in finding Appellant' claim of ineffective assistance of trial and appellate counsel meritless.

C.

Appellant next argues that the PCRA court erred in dismissing his layered ineffectiveness claim that Attorney Moore was ineffective for failing to meet meaningfully with Appellant prior to trial, and Attorney Mariano was ineffective for failing to raise this claim on direct appeal.[5] Appellant's Brief at 32.

During Appellant's evidentiary hearing, Attorney Moore testified regarding his representation of Appellant. ***See generally*** N.T., 5/14/2014,

---

[5] As noted *supra*, Appellant's direct appeal predated ***Grant***, 813 A.2d 726.

at 5-96. Following the hearing, the PCRA court credited Attorney Moore's testimony that he prepared adequately for Appellant's case, met with him more than once, and did not fail to interview Appellant prior to trial. PCRA Court Opinion, 1/18/2018, at 11. Upon review of the record, there is ample support for the PCRA court's factual findings. *See* N.T., 5/14/2014, at 45, 50-51, 63-65, 67-68. Because Appellant's claim that trial counsel was ineffective is without merit, appellate "counsel will not be deemed ineffective for failing to raise a meritless claim." *Spotz*, 896 A.2d at 1210 (citation omitted). Accordingly, we conclude that the PCRA court did not err in dismissing this claim.

D.

Appellant next argues that the PCRA court erred in dismissing his claim that Attorney Moore was ineffective for failing to investigate and uncover the mental health impeachment evidence referenced in Appellant's first claim to undermine the credibility of Blakeney. Appellant's Brief at 37.

As discussed *supra*, Blakeney's plea record was sealed throughout Appellant's trial, and Appellant has failed to establish that the record contained any impeachable evidence. ***See Davido, supra***. Additionally, Attorney Moore testified that because Appellant and Blakeney were friends, he believed that if Appellant had any useful impeachment evidence, Appellant would have disclosed that. N.T., 5/14/2014, at 94-96. Attorney Moore also testified that he would not have interviewed Blakeney because

Blakeney was Appellant's co-defendant and represented by counsel. *Id.* at 76-77. As such, the PCRA court's findings are supported by the record, and we conclude that the court did not err in dismissing this claim.

E.

Appellant next claims that the PCRA court erred in dismissing his claim of prosecutorial misconduct when the Commonwealth vouched for the credibility of Blakeney and the trial court did not give a curative instruction. Appellant's Brief at 40. However, as noted by Appellant, this precise claim was previously litigated during Appellant's direct appeal.[6] *Id.* Accordingly,

---

[6] On direct appeal, Appellant argued that the prosecutor improperly bolstered Blakeney's testimony during direct and redirect examination by asking him whether his plea was conditioned on his truthful testimony in the instant case, and that the trial court erred in failing to give a curative instruction after sustaining defense counsel's objection on redirect. *Miller*, 819 A.2d at 513-14. Our Supreme Court held that the prosecutor did not assert his personal opinion as to Blakeney's credibility, but was merely articulating "the parameters of the plea agreement, that Blakeney would provide 'truthful' testimony and a guilty plea, in exchange for life imprisonment (as opposed to death)." *Id.* at 515-16. Additionally, the trial court instructed the jury on how to receive accomplice testimony, including that those caught in the commission of a crime may falsely accuse others, and specifically that "the testimony of [] Blakeney should be looked upon with disfavor as coming from [a] corrupt and polluted source[.]" *Id.* at 516 (quoting N.T., 9/24/1999, at 20). Our Supreme Court noted that the law presumes juries will follow the instructions given, and concluded the Commonwealth did not impermissibly bolster Blakeney's testimony. *Id.* Finally, Appellant also argued that Attorney Moore was ineffective for failing to object to the Commonwealth's questions. Because our Supreme Court concluded that the underlying argument lacked merit, counsel would not be deemed ineffective for failing to raise a meritless claim, and therefore the Court did not address the ineffectiveness claim. *Id.* at 516 n.12.

*(Footnote Continued Next Page)*

the PCRA court properly dismissed this claim. *See* 42 P.C.S. § 9543(a)(3) ("To be eligible for relief…, the petitioner must plead and prove by a preponderance of the evidence[, *inter alia*, t]hat the allegation of error has not been previously litigated or waived.").

F.

Appellant next claims that he is entitled to relief because of the cumulative effect of the errors committed at his trial. Appellant's Brief at 41. "Although cumulative prejudice from individual claims of ineffective assistance may be properly assessed in the aggregate when the individual claims have failed due to lack of prejudice, an appellant who claims cumulative prejudice must still set forth some specific, reasoned, and supported argument for the claim." *Commonwealth v. Watkins*, 108 A.3d 692, 735 (Pa. 2014) (citation omitted). Appellant's individual claims

*(Footnote Continued)* ───────────────

Appellant attempts to resurrect this claim by citing the mental health evidence referenced in his first claim because, in his opinion, it shows that the prosecutor bolstered Blakeney's testimony while aware that Blakeney was severely mentally ill. "An issue is not previously litigated when it does not rely solely upon previously litigated evidence." *Commonwealth v. Chmiel*, 173 A.3d 617, 627 (Pa. 2017) (citation omitted). However, as noted *supra*, the PCRA court found that the Commonwealth did not have in its possession the detailed mental health records, nor the plea hearing transcript. The record supports this finding. Moreover, our Supreme Court held in Appellant's direct appeal that the Commonwealth did not comment on the credibility of Blakeney, but rather merely articulated the parameters of the plea agreement. Blakeney's mental health does not affect those terms. Thus, because Appellant has failed to establish a new fact upon which he relies, he cannot resurrect this claim from the graveyard of previous litigation.

did not fail for lack of prejudice, and so the prejudice cannot be accumulated. Moreover, given Appellant's paltry argument and that his claims of error are either meritless, waived, or previously litigated, we conclude that such claims, even if accumulated together, do not warrant relief.

G.

Finally, Appellant claims that he was denied a full and fair PCRA hearing based on various, allegedly erroneous, court rulings. Appellant's Brief at 43-44. However, Appellant does not cite a single authority in support of this claim.

> Our rules of appellate procedure require an appellant to support his or her argument with pertinent analysis, including citation to and discussion of relevant authority and facts of record. **See** Pa.R.A.P. 2119. This court will not become the counsel for an appellant and develop arguments on an appellant's behalf, and waiver of an issue results when an appellant fails to properly develop an issue or cite to legal authority to support his contention in his appellate brief.

**Commonwealth v. Cox**, 72 A.3d 719, 721 n.3 (Pa. Super. 2013) (some citations omitted). Accordingly, this claim is waived.

III.

Based on the foregoing, none of Appellant's claims entitle him to relief and, accordingly, we affirm the order of the PCRA court.

Order affirmed.

Judge Lazarus joins in this opinion.

Judge Olson files a dissenting opinion.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*

*Prothonotary*

*Date: 6/11/2019*