J-A27043-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
WILLIAM ROGERS, :
:
Appellant : No. 3149 EDA 2018

Appeal from the Order Dated September 26, 2018
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007426-2012

BEFORE:  BOWES, J., SHOGAN, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.: **FILED JULY 28, 2020**

William Rogers (Appellant) appeals from the September 26, 2018 order dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Upon review, we affirm.

By way of background, Appellant fatally shot Mark Aursby in a dispute over a bicycle on March 14, 2012.  In June 2012, Appellant turned himself in[1] and provided a statement to police claiming that he shot Aursby in self-defense because he "thought that [Aursby] was going to reach for a gun." Appellant's Statement to Police, 6/4/2012, at 4 (unnumbered).  As such, Appellant's trial counsel (trial counsel) prepared for trial on a theory of self-defense.  Thereafter, Appellant's mother (Mother) notified trial counsel that Appellant had an alibi: he was at a party at his great-aunt Marlena Parker's

---

[1] Appellant's uncle, Michael Burke, was with him when he turned himself in.

* Retired Senior Judge assigned to the Superior Court.

house at the time of the shooting. Trial counsel consulted with Appellant about this change in defense strategy and he had his investigator, Karim Shabazz, investigate the purported alibi. Trial counsel filed a notice of alibi listing Marlena,[2] Mother, Michael, and Appellant's sister, Jasmine Rogers, as alibi witnesses. Notice of Alibi, 9/5/2013. Trial counsel additionally listed Shirley Lackey[3] in the notices of alibi as an individual who saw the shooting and would testify that Appellant was not the shooter. *Id.*, Amended Alibi Notice, 9/18/2013.

On September 23-27, 2017, Appellant proceeded to a jury trial. Trial counsel subpoenaed the alibi witnesses for trial and introduced his alibi defense strategy in his opening statement. The Commonwealth called, *inter alia*, Nyteisha Sanders and siblings Zahir Wiggins and Shanae Talley as eyewitnesses. All three had provided statements to police shortly after the shooting identifying Appellant as the shooter. Because they recanted to various degrees in their trial testimony, these statements were introduced as substantive evidence. Enrico Crispo also testified as an eyewitness but was unable to identify the shooter.

Mid-trial, when trial counsel went to speak with the alibi witnesses before calling them to the witness stand, he learned that they either could

---

[2] This Court will refer to lay witnesses by their first names to avoid confusion because some witnesses share the same last name.

[3] It was clarified at the PCRA hearing that Shirley's name was actually Yvonne.

not testify as to Appellant's whereabouts at the time of the shooting or refused to come in to testify. Accordingly, after consultation with Appellant, trial counsel shifted gears back to the self-defense strategy. Appellant chose not to testify at trial, so trial counsel called Michael to testify about Appellant's statement to police. In his closing argument, trial counsel focused on establishing reasonable doubt in the Commonwealth's case by, *inter alia*, arguing that Appellant's statement was coerced, highlighting the eyewitnesses' inconsistencies, and calling attention to the fact that two different types of shell casings were found at the scene.

On September 27, 2013, the jury found Appellant guilty of first-degree murder, carrying a firearm without a license, and possession of an instrument of crime (PIC). Appellant was sentenced to life imprisonment for first-degree murder, with concurrent terms of three to six years of incarceration for carrying a firearm without a license and two to five years of incarceration for PIC.

This Court affirmed Appellant's judgment of sentence on direct appeal, and our Supreme Court denied Appellant's petition for allowance of appeal. **Commonwealth v. Rogers**, 122 A.3d 1140 (Pa. Super. 2015) (unpublished memorandum), *appeal denied*, 128 A.3d 220 (Pa. 2015).

On November 9, 2016, Appellant *pro se* timely filed the instant PCRA petition. The PCRA court appointed Attorney David Rudenstein, who filed an amended PCRA petition on April 7, 2017. On May 8, 2017, Attorney Michael

Wiseman entered his appearance on behalf of Appellant. On November 17, 2017, Attorney Wiseman filed an amended PCRA petition, replacing Attorney Rudenstein's prior amended PCRA petition and raising ten claims. Relevant to this appeal, Appellant raised the following claims: (1) constructive denial of Appellant's right to counsel; (2) four instances of ineffective assistance of trial counsel; (3) denial of Appellant's right to a public trial and counsel's ineffectiveness in pursuing this claim; (4) prosecutorial misconduct and counsel's ineffectiveness in pursuing this claim; (5) cumulative prejudice; and (6) actual innocence. *See generally* Amended PCRA Petition, 11/17/2017.

An evidentiary hearing was held on September 19 and 20, 2018. At the hearing, the PCRA court heard testimony from trial counsel, Shabazz, Mother, Yvonne, Marlena, Michael, Jasmine, and Dr. Gerald Cooke, an expert in forensic psychology. On September 26, 2018, the PCRA court dismissed Appellant's PCRA petition.

This timely-filed appeal followed. On appeal, Appellant claims that the PCRA court erred in dismissing nine of his PCRA claims. Appellant's Brief at 1-2. We begin with our standard of review.

> This Court analyzes PCRA appeals in the light most favorable to the prevailing party at the PCRA level. Our review is limited to the findings of the PCRA court and the evidence of record and we do not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. Similarly, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions.

- 4 -

Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary. Finally, we may affirm a PCRA court's decision on any grounds if the record supports it.

***Commonwealth v. Benner***, 147 A.3d 915, 919 (Pa. Super. 2016) (quoting

***Commonwealth v. Perry***, 128 A.3d 1285, 1289 (Pa. Super. 2015)).

<u>Ineffective Assistance of Trial Counsel</u>

We begin with Appellant's ineffective-assistance-of-trial-counsel claims. "To establish ineffectiveness of counsel, a PCRA petitioner must show the underlying claim has arguable merit, counsel's actions lacked any reasonable basis, and counsel's actions prejudiced the petitioner." ***Commonwealth v. Jones***, 71 A.3d 1061, 1063 (Pa. Super. 2013) (citations omitted). "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." ***Commonwealth v. Daniels***, 963 A.2d 409, 419 (Pa. 2009).

*Ineffective Assistance of Trial Counsel: Alibi*

Appellant first argues that trial counsel was ineffective for failing to investigate and interview alibi witnesses, and for opening to the jury with an alibi defense but then failing to present any alibi witnesses or explain their absence to the jury. Appellant's Brief at 32.

> This Court has recognized that trial counsel has a general duty to undertake reasonable investigations or make reasonable decisions[,] which render particular investigations unnecessary. The duty to investigate, of course, may include a duty to interview certain potential witnesses; and a prejudicial failure to fulfill this duty, unless pursuant to a reasonable strategic

- 5 -

decision, may lead to a finding of ineffective assistance.

***Commonwealth v. Mitchell***, 105 A.3d 1257, 1276 (Pa. 2014) (citations and quotation marks omitted).

> A claim that trial counsel did not conduct an investigation or interview known witnesses presents an issue of arguable merit where the record demonstrates that counsel did not perform an investigation. It can be unreasonable *per se* to conduct no investigation into known witnesses. A showing of prejudice, however, is still required.

***Commonwealth v. Stewart***, 84 A.3d 701, 712 (Pa. Super. 2013) (citations omitted).

> To prevail on a claim of trial counsel's ineffectiveness for failure to call a witness, an appellant must show: (1) the witness existed; (2) the witness was available; (3) counsel was informed of the existence of the witness or should have known of the witness's existence; (4) the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) the absence of the testimony prejudiced appellant.

***Commonwealth v. Cousar***, 154 A.3d 287, 312 (Pa. 2017) (citation omitted).

At the PCRA hearing, trial counsel testified that he tasked his investigator, Shabazz, with investigating the alibi witnesses, and he relied on Shabazz's oral reports that he had spoken with the alibi witnesses. Additionally, trial counsel testified that he sent a copy of the filed alibi notice to Appellant to ensure that the names, as written, were correct. N.T., 9/19/2018, at 86-87, 89-90, 96, 103-04, 132, 160. Trial counsel subpoenaed those witnesses, but when he went to speak with the witnesses before putting them on the witness stand, he learned that they either could

not testify that Appellant was with them or refused to come in to testify. Accordingly, trial counsel switched his defense strategy back to self-defense with Appellant's approval. *Id.* at 99-100, 102, 134-35, 156-59.

Mother testified that Shabazz cancelled the first two appointments to discuss Appellant's case. She ultimately met Shabazz at the third appointment, but the other alibi witnesses were not present. *Id.* at 13-15. Shabazz testified that he met with Mother regarding the alibi, and was told a number of names for people who could testify that Appellant was at Marlena's party at the time of the murder. This list of names included Mother. *Id.* at 43-45. Shabazz remained in contact with Mother and her family throughout Appellant's trial. *Id.* at 49-50. Mother told Shabazz about Yvonne's proposed testimony, and Shabazz interviewed the Lackey family. *Id.* at 15, 45-48.

In dismissing Appellant's claim, the PCRA court credited trial counsel's testimony about his reliance on Shabazz.

> [T]rial counsel investigated the alibi witnesses and reasonably relied on his investigation. However, at the time of trial, the witnesses either failed to appear or recanted. [Mother] was present during the trial and could have testified to the alibi but did not do so, and did not dispute the contention made by [trial counsel] that the alibi witnesses were recanting. Moreover, the putative alibi was unpersuasive. [Marlena] did not specify when the party began, nor the time frame when she saw [Appellant] at the party. The murder was committed approximately two blocks from the address of the party. Even if [Appellant] had attended the party he could easily have left, committed the shooting, and returned to the party. Therefore, even if the alibi testimony had been presented, it would not have resulted in a different verdict.

- 7 -

PCRA Court Opinion, 2/25/2019, at 14 (citations omitted).

As to trial counsel's reference to an alibi in his opening statement that went unfulfilled and unexplained to the jury, the PCRA court found as follows.

> At [the time of trial counsel's opening statement,] he was relying on the information given to him by his investigator, [Appellant], and [Mother]. When he became aware that the alibi witnesses were recanting, he changed his strategy to self-defense and persuaded the Commonwealth not to mention alibi or ask for an adverse inference instruction regarding alibi. [Trial counsel] did the best he could under the circumstances created by [Appellant] and [Mother]. Moreover, [the trial c]ourt gave a cautionary instruction regarding opening statements.

PCRA Court Opinion, 2/25/2019, at 15.

Upon review, we find that the PCRA court's findings are supported by the record and are free of legal error. The PCRA court credited trial counsel's testimony that he believed his investigator interviewed the alibi witnesses in preparing for trial. We will not disturb the credibility determinations of the PCRA court. *Commonwealth v. Roney*, 79 A.3d 595, 603 (Pa. 2013) (citation omitted) ("The PCRA court's credibility determinations, when supported by the record, are binding on this Court[.]"). While trial counsel did not personally investigate the alibi, he tasked his investigator with doing so and reasonably relied on that investigation in preparing his alibi defense for trial. Though in hindsight it may have been preferable in this instance to prepare the witnesses prior to trial, trial counsel acted reasonably in following his normal practice of

waiting to prepare the witnesses, who he believed his investigator had spoken with, until shortly before they testified. As such, he acted reasonably when he included the alibi in his opening statement, even though the defense ultimately fell apart. He cannot be faulted for failing to present witnesses who could not or would not provide an alibi, and counsel's decision to focus on self-defense instead of the failed alibi in his closing argument was reasonable. Thus, the PCRA court did not err in dismissing Appellant's PCRA claims.

*Ineffective Assistance of Trial Counsel: Yvonne Lackey*

Appellant next argues that counsel was ineffective for failing to interview and call Yvonne as a witness. Appellant's Brief at 36.

At the PCRA hearing, Yvonne testified that she spoke with Appellant while he was on his way to Marlena's party 20 minutes before the shooting. She further testified that she observed the shooting, and that Appellant was not the shooter. According to Yvonne, she was never interviewed by Shabazz about this murder, even though she told Mother that she was willing to testify to what she saw. She testified that Mother nonetheless asked her to come to court, but she could not remember whether she went. N.T., 9/19/2018, at 161-62, 164, 166-72, 185-86. However, it was unclear from her testimony whether she had notified Mother of her proposed testimony prior to Appellant's 2013 trial as she referenced 2016 dates and speaking with Appellant's PCRA attorneys. *Id.* at 185-87.

Shabazz testified that he spoke with the Lackey family, including Yvonne, and that she told him she did not see the shooting. *Id.* at 47-48, 51-52. Appellant testified that he was unsure whether he saw Yvonne on the day of the shooting. N.T., 9/20/2018, at 62.

In denying this claim, the PCRA court credited the testimony of Shabazz that he interviewed Yvonne and she was unable to testify favorably for the defense. The PCRA court further found Yvonne's proposed testimony incredible. PCRA Court Opinion, 2/25/2019, at 16-17.

> Since [Yvonne] was not credible, [trial counsel] could not have been ineffective for failing to call [her] as a witness. Her proposed testimony that [Appellant] told her that he was going to the party does not amount to an alibi that he was actually at the party. [Yvonne's] conclusion that the shooter was not [Appellant] was contradicted by the testimony of [Zahir, Shanae, and Nyteisha] who put [Appellant at] the scene.

*Id.* at 18.

On appeal, Appellant argues that it was unreasonable for the PCRA court to credit the testimony of Shabazz over Yvonne because Shabazz did not take notes and the court's conclusions were not supported by the record. Appellant's Brief at 39. Upon review, although Appellant believes Yvonne to be more credible than Shabazz, the PCRA court's conclusions and credibility determinations are supported by the testimony offered at Appellant's PCRA hearing, and we will not disturb them. Accordingly, the PCRA court did not err in dismissing this claim.

*Ineffective Assistance of Trial Counsel: Two-Gun Theory*

Appellant next argues that trial counsel was ineffective for "failing to adequately exploit the fact that two separate guns were fired at the scene" to support Appellant's self-defense theory in his closing argument. Appellant's Brief at 42.

During his closing argument, trial counsel referenced the ballistics evidence as follows.

> What are the facts?  Not mentioned in the opening, there happens to be two guns out there or two people firing.  Well, isn't that a surprise? It is not mentioned by [Nyteisha, Zahir, and Shanae].  So they put the ballistics man on, Officer Scott.  This is from one kind of gun, not a Glock.  These here are from a Glock, square versus circular or whatever the testimony was.  So how do we get around that? There are two sets of bullets out there which usually means there are two people shooting. (Indicating).

> Oh, it is a relic. Of course.  Did anyone interview, was there a shooting the night before or two weeks before?  This is a busy street.  So let's look at relics.  … Let's see if these are relics, things [lying] around on the street for days.  You can look at them back in the jury room.  I will not hand them to you. They don't have the consistency of something [lying] out in the street, filled with dirt, run over by cars, things of that nature. We need a little more than that.  Maybe it was last night. Unfortunately, there are a lot of shootings in the streets of Philadelphia[.] …

> There are two different shells and they are not that far apart.  If you look at the photographs, and you have seen these on the screen … this is the scene looking east ….  Here are the two shells I just had in my hand sitting on the box a few seconds ago.  They are about 30, 40 feet on the corner.  It is really not that far.  It is not that far.  It is like the first down and-a-half.  …

> So what is going on?  We have two sets of shells here and we don't have an explanation of what's happening but let's keep

digging. We are trying to find out and, unfortunately, I am not going to be able to give you the conclusive answers. It is not like Perry Mason where a witness gets up and says I did it. … I cannot give that to you but I am raising issues that should concern you and should be debated and discussed before you reach a conclusion in this case.

N.T., 9/27/2013, at 27-30.

At Appellant's PCRA hearing, trial counsel testified that none of the witnesses, either in their police statements or trial testimony, placed a gun in Aursby's hand. It was only Appellant's statement to police that referenced Aursby possibly having a gun. N.T., 9/19/2018, at 137. Therefore, when trial counsel switched his defense strategy from an alibi to self-defense, he chose to focus on establishing reasonable doubt by arguing that Appellant's statement was coerced, and that the Commonwealth witnesses recanted and were inconsistent. *Id.* at 135, 137. This avenue was what he perceived as the best way to take a case that had fallen apart and "put enough back together that there'd be some form of reasonable doubt." *Id.* at 137.

In dismissing Appellant's claim, the PCRA court found that trial counsel, after having to switch defense strategies mid-trial, effectively addressed a two-gun theory in his closing argument. PCRA Court Opinion, 2/25/209, at 18. Upon review, we hold that the PCRA court's conclusion is supported by the record. Because counsel had a reasonable strategic basis for arguing the ballistics evidence as he did, the PCRA court did not err in dismissing this PCRA claim.

- 12 -

*Ineffective Assistance of Trial Counsel: Mental Health Evidence*

Appellant next argues that trial counsel was ineffective for failing to "obtain records or have Appellant evaluated by a mental health professional to determine if his emotional and psychological deficits impaired his ability to make a knowing, intelligent, and voluntary waiver of his **Miranda**[4] rights." Appellant's Brief at 44 (citation omitted). Appellant argues that "[w]hile counsel filed a motion to suppress the statement [given to police], and presented **argument** that Appellant had cognitive and emotional deficits, he failed to support this argument by collecting relevant records related to Appellant's life, schooling, and mental health, and failed to have him evaluated by a mental health professional." ***Id.*** (emphasis in original). Additionally, Appellant argues that counsel should have presented this evidence to the jury. ***Id.*** at 46.

We begin by observing the following.

[T]here is no *per se* rule that there can be no voluntary waiver when a person is mentally ill.

> The voluntariness standard of **Miranda** requires that the prosecution prove by a preponderance of the evidence that the waiver is knowing and intelligent. This requires a two-step analysis. First, the waiver must have been voluntary in the sense that it was an intentional choice made without any undue governmental pressure; and, second, that the waiver must have been made with a full comprehension of both the nature of the right being abandoned and the consequences of that choice.

---

[4] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

[**Commonwealth v.**] **Logan**, [] 549 A.2d [531,] 537 [(Pa. 1988)] (citation omitted).

> Thus, in the suppression realm, the focus is upon police conduct and whether a knowing, intelligent and voluntary waiver was effected based on a totality of the circumstances, which may include consideration of a defendant's mental ... condition[.] When a defendant alleges that his waiver or confession was involuntary, the question is not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess.

[**Commonwealth v.**] **Sepulveda**, [] 55 A.3d [1108,] 1136-37 [(Pa. 2012)] (quotation marks and quotations omitted).

**Commonwealth v. Mitchell**, 105 A.3d 1257, 1268 (Pa. 2014) (some citations omitted).

At the PCRA hearing, Dr. Cooke testified that in preparation for the PCRA hearing, he conducted a forensic evaluation of Appellant by interviewing Appellant, conducting a history, administering various tests to Appellant, and reviewing Appellant's records. He testified that this evaluation revealed that Appellant had previously been diagnosed with post-traumatic stress disorder (PTSD), anti-social traits, and impulse control disorder. After completing a program at Benchmark prior to the murder, Appellant's diagnosis changed in that both the PTSD and anti-social traits diagnoses were resolved. However, upon discharge, Appellant was diagnosed with dysthymia, or persistent depressive disorder. Appellant was

prescribed anti-depressants and treatment, with which he did not comply. Additionally, Appellant had an IQ of 85, which was in the low-end of the average range. Dr. Cooke concluded that Appellant was cognitively able to understand the **Miranda** warnings, and that based on his functioning the day he provided his statement to police, he would have been mildly-to-moderately depressed. N.T. 9/20/2018, at 17-18, 22-25, 30-31, 35, 37-39, 51. Finally, Dr. Cooke testified that he would have been available as a witness at Appellant's 2013 jury trial. **Id.** at 52.

In denying Appellant's claim, the PCRA court considered this testimony and the proposed records and found that Appellant was not prejudiced by their absence.

> In denying [Appellant's] motion to suppress his statement, th[e c]ourt found that [Appellant] testified that at the time he turned himself in to the police, he was taking Melatonin and Benadryl and a medicine for depression, the name of which he did not recall. [Appellant] testified that he had a learning disability and that he could read and write very little. N.T., 9/24/2013[], at 100.
>
> The additional testimony presented by Dr. Cooke at the evidentiary hearing does not change this Court's view of the motion to suppress. The fact that [Appellant] had an IQ of 85[] would not lead the court to conclude [Appellant] could not make a knowing, intelligent, and voluntary waiver. Accordingly, [the PCRA c]ourt [found] that Dr. Cooke's testimony gave very little support to this claim that [Appellant] was impaired to such a degree that he could not make an intelligent and voluntary waiver. Neither Dr. Cooke's testimony nor the Benchmark records would have changed the result on the motion to suppress. Nor would the introduction of these items at trial have persuaded the jury to disbelieve the voluntariness or credibility of [Appellant's] statement.

PCRA Court Opinion, 2/25/2019, at 20.

Upon review, we conclude that the record supports the PCRA court's finding that Appellant was not prejudiced by the absence of this evidence, and therefore counsel was not ineffective for failing to present it.

Pretrial Communication

We now review whether the PCRA court erred in denying Appellant's constructive-denial-of-trial-counsel PCRA claim. Specifically, Appellant claims that he was constructively denied the right to trial counsel because his only pre-trial interactions with counsel "consisted of a single 20-30 minute video conference" and one additional face-to-face conference in the cell room next to the courtroom. Appellant's Brief at 27.

The seminal case for reviewing this type of claim is *Commonwealth v. Brooks*, 839 A.2d 245 (Pa. 2003).[5]

> *Brooks* essentially announced the minimum action required by counsel to provide what is deemed constitutionally effective representation in capital cases: **counsel must conduct at least one face-to-face meeting with his client.**
>
> More recently, in [] *Johnson,* 51 A.3d 237[], the defendant, who was [] convicted of first-degree murder and sentenced to life in prison, argued on collateral appeal that trial counsel was ineffective where he failed to have a face-to-face meeting with him until the eve of trial. The majority determined that where counsel had a last minute meeting with Johnson on the eve of trial, a face-to-face meeting with the defendant at his preliminary hearing, and a phone consultation with his client, he

---

[5] *Brooks* was a capital case. This Court has applied *Brooks* to non-capital cases. *See Commonwealth v. Johnson*, 51 A.3d 237 (Pa. Super. 2012) (*en banc*).

was not *per se* ineffective. Essentially, the Court found that counsel's limited pretrial contact with his client was entirely distinguishable from the attorney in ***Brooks*** who "failed to meet with his client 'at all.'" ***Id.*** at 243. While our Court acknowledged that additional pre-trial attorney-client contact "may have been advisable," it declined to read ***Brooks*** in a way that would prevent it from analyzing the substantive impact that counsel had on the defendant's trial strategy. ***Id.*** at 243-44.

***Commonwealth v. Brown***, 145 A.3d 196, 203 (Pa. Super. 2016) (footnote omitted; emphasis in original).

In denying Appellant's PCRA claim, the PCRA court found the instant case analogous to ***Johnson***.

Here, [Appellant] was sentenced to life imprisonment following a non-capital murder trial. Trial counsel conducted at least two meetings with [Appellant]; one via video conference, and one face-to-face in the holding cell of the courtroom. Based on those meetings, and the exchange of letters,[6] trial counsel was able to prepare two defense strategies for [Appellant]. Trial counsel originally prepared this case as a self-defense case, and changed his trial strategy when [Appellant] switched his story to an alibi. A private investigator was sent to collect evidence for the self-defense claim, and later for the alibi story. Trial counsel investigated the alibi claim and in good faith believed that alibi evidence would be available for trial. Trial counsel even subpoenaed four witnesses to support the alibi defense. When that claim fell apart after the start of trial, counsel was able to competently argue a self-defense claim that was ultimately unsuccessful. N.T., 9/26/2018, at 51-60, 76.

Like in ***Johnson***, trial counsel consulted with [Appellant] multiple times, and based on the substantive impact of those consultations was able to prepare a defense strategy on behalf of [Appellant]. Therefore, [Appellant] was not constructively denied counsel; and this claim warrants no relief.

---

[6] Trial counsel sent multiple, apparently unanswered, letters to Appellant. ***See*** N.T., 9/19/2018, at 114-16; N.T., 9/20/2018, at 57.

PCRA Court Opinion, 2/25/2019, at 12-13.

Upon review, we agree with the PCRA court that trial counsel's contact is more akin to **Johnson** than **Brooks**. The record before us supports the PCRA court's conclusion that trial counsel's actions were sufficient to allow him to "obtain adequate information to defend [Appellant] against first-degree murder charges[.]" **Johnson**, 51 A.3d at 244. Accordingly, the PCRA court did not err in dismissing this claim.

<u>Prosecutorial Misconduct and Ineffective Assistance of Appellate Counsel</u>

Appellant next argues that it "was an abuse of discretion to deny Appellant's claim that he was deprived of due process by the prosecutor's misconduct and that appellate counsel was ineffective for inadequately litigating this claim." Appellant's Brief at 51. While acknowledging that appellate counsel previously raised this claim in Appellant's direct appeal, Appellant avers that the PCRA court erred in dismissing this claim as previously litigated because appellate counsel "presented an incomplete argument and failed to cite controlling authority which, if considered by this Court, would likely have changed the direct appeal outcome." **Id.** at 52. Moreover, Appellant argues that the "direct appeal opinion finding some of the statements an invited response was incorrect[.]" **Id.** at 53.

In order to be eligible for relief under the PCRA, a petitioner must plead and prove by a preponderance of the evidence that the allegation of error has not been previously litigated. 42 Pa.C.S. § 9543(a)(3). An issue

has been previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue[.]" 42 Pa.C.S. § 9544(a)(2). However, our Supreme Court has held that "ineffectiveness claims are distinct[] from those claims that are raised on direct appeal." *Commonwealth v. Collins*, 888 A.2d 564, 573 (Pa. 2005).

> The former claims challenge the adequacy of representation rather than the conviction of the defendant. Accordingly, we are persuaded by Appellant's position that a Sixth Amendment claim of ineffectiveness raises a distinct legal ground for purposes of state PCRA review under § 9544(a)(2). Ultimately, the claim may fail on the arguable merit or prejudice prong for the reasons discussed on direct appeal, but a Sixth Amendment claim raises a distinct issue for purposes of the PCRA and must be treated as such.

*Id.*

We agree with the PCRA court's conclusion that Appellant's claim of prosecutorial misconduct was previously litigated, and affirm the dismissal of this claim on that basis. However, based on *Collins*, we conclude that the PCRA court erred in dismissing Appellant's ineffective-assistance-of-appellate-counsel claim as previously litigated.[7, 8] We thus turn to the merits of Appellant's ineffectiveness claim.

---

[7] This Court "may affirm a PCRA court's decision on any grounds if the record supports it." *Benner*, 147 A.3d at 919 (citation omitted).

[8] Insofar as Appellant claims that appellate counsel was ineffective for failing to argue prosecutorial misconduct in the Commonwealth's opening statement based on the prosecutor's statement that she "did not believe"
*(Footnote Continued Next Page)*

On direct appeal, a prior panel of this Court reviewed the underlying claim of prosecutorial misconduct raised by appellate counsel. Although this Court found that portions of the prosecutor's closing argument violated the American Bar Association standards, we ultimately rejected Appellant's claim, concluding as follows.

> The prosecutor unambiguously expressed her personal opinion of Appellant's veracity. Nonetheless, the law requires us to consider those statements in context rather than isolation. After the objectionable statement, the prosecutor explained in detail – based on the evidence of record and not based on her opinion – why Appellant's statement was not believable. Considering the prosecutor's statement in context, we believe it was a fair response to [the assertion of] Appellant's counsel[] that Appellant's statement [had] completely refute[d] all of the testimony evincing his guilt. Per [*Commonwealth v.*] *Chmiel*, [889 A.2d 501, 543 (Pa. 2005),] a prosecutor is permitted to make a fair response to defense counsel's argument. Furthermore, we must analyze a prosecutor's conduct under a harmless error standard. As set forth above, the record contains substantial direct evidence – in the form of eyewitness testimony – confirming Appellant's guilt. Given the overwhelming evidence of Appellant's guilt and the comparative insignificance of the prosecutor's remarks during closing, we cannot conclude the isolated objectionable remarks warrant a new trial.

*Rogers*, 122 A.3d 1140 (unpublished memorandum at 7-8) (some citations omitted).

In his PCRA petition, Appellant argued that appellate counsel rendered ineffective assistance of counsel by failing to argue adequately why

*(Footnote Continued)* _____

the reasons offered by Appellant, Appellant's Brief at 52, trial counsel did not object to that statement, and therefore appellate counsel cannot be found ineffective for failing to raise it on appeal. *See* N.T., 9/24/2013, at 131.

Appellant was prejudiced by the Commonwealth's statements, by failing to cite controlling authority, and by failing to distinguish the instant case from ***Chmiel, supra***. Amended PCRA Petition, 11/17/2017, at 77, 79. Specifically, Appellant assails appellate counsel for failing to cite ***Commonwealth v. Revty***, 295 A.2d 300 (Pa. 1972); ***Commonwealth v. Johnson***, 533 A.2d 994 (Pa. 1987); ***Commonwealth v. Cronin***, 346 A.2d 59 (Pa. 1975); ***Commonwealth v. Lipscomb***, 317 A.2d 205 (Pa. 1974); ***Commonwealth v. Potter***, 285 A.2d 492 (Pa. 1971); and ***Commonwealth v. Culver***, 51 A.3d 866 (Pa. Super. 2012), in his appellate brief. Amended PCRA Petition, 11/17/2017, at 72-73, 78. Had counsel cited these cases and briefed their significance to this Court, Appellant argued that there was "a reasonable probability that the outcome would have been different." ***Id.*** at 77-79.

Preliminarily, we note that no record exists as to whether appellate counsel had a reasonable basis for briefing this claim as he did. However, this dearth of record evidence is due to Appellant's choosing not to present evidence at the PCRA hearing. At the PCRA hearing, Appellant notified the PCRA court that he would be presenting evidence as to specific ineffective assistance of trial counsel claims and his claim that he was constructively denied the right to trial counsel. N.T., 9/19/2018, at 7-8. As to the remainder of his PCRA claims, Appellant's PCRA counsel stated that "[t]he other issues were either [*sic*] we don't believe require a presentation, we will

not be pursuing them." *Id.* at 8. It is well-settled that "a PCRA petitioner bears the burden of demonstrating counsel's ineffectiveness." *Commonwealth v. Miller*, 212 A.3d 1114, 1126 (Pa. Super. 2019) (citation omitted). Moreover, "[o]ur Supreme Court has articulated a strong preference that counsel be heard before being found ineffective[.]" *Commonwealth v. Durrett King*, 195 A.3d 255, 263 (Pa. Super. 2018) (citation omitted).

Because Appellant had the opportunity to call appellate counsel at the PCRA hearing, but declined to do so, Appellant has failed to sustain his burden of proof. Moreover, our review of the cases cited by Appellant does not convince us that had appellate counsel presented those cases, the outcome of Appellant's direct appeal would have been different. Accordingly, the PCRA court did not err in dismissing this claim.

### Cumulative Prejudice

We next review Appellant's claim of cumulative prejudice. Appellant's Brief at 55.

> [W]here a claimant has failed to prove prejudice as the result of any individual errors, he cannot prevail on a cumulative effect claim unless he demonstrates how the particular cumulation requires a different analysis. Although cumulative prejudice from individual claims may be properly assessed in the aggregate when the individual claims have failed due to lack of prejudice, nothing in our precedent relieves an appellant who claims cumulative prejudice from setting forth a specific, reasoned, and legally and factually supported argument for the claim. A bald averment of cumulative prejudice does not constitute a claim.

***Commonwealth v. Hutchinson***, 25 A.3d 277, 318-19 (Pa. 2011) (citations and quotation marks omitted).

Here, Appellant's entire argument in support of this claim is as follows.

Appellant raised numerous claims of ineffective assistance of counsel. When such claims fail individually for lack of prejudice, then relief may be granted based on cumulative prejudice. ***Commonwealth v. Koehler***, 36 A.3d 121, 161 (Pa. 2012).

The cumulative prejudice from trial counsel's miscues and inactions created the reasonable probability that but for the errors and omissions of counsel, the outcome of [*sic*] would have been different.

Appellant's Brief at 55-56. ***See also*** Appellant's Amended PCRA Petition, 11/17/2017, at 82-83 (restating each individual claim of error but reaching the same bald conclusion). Such a "bald averment of cumulative prejudice does not constitute a claim." ***Hutchinson***, 25 A.3d at 319. Accordingly, the PCRA court did not err in dismissing this claim.

## Actual Innocence

We next review Appellant's argument that the "continued incarceration of a factually innocent person is a deprivation of that individual's right to liberty and to be free from cruel and unusual punishment" and that such a claim is a cognizable basis for relief under the Pennsylvania and United States constitutions. Appellant's Brief at 56.

Our Supreme Court has held that such a claim is cognizable under the PCRA because "although § 9543 does not use the term 'actual innocence' in enumerating cognizable claims, the Act specifically states it is intended to

- 23 -

'provide[ ] for an action by which persons convicted of crimes they did not commit ... may obtain collateral relief.'" **Commonwealth v. Abu-Jamal**, 833 A.2d 719, 728 (Pa. 2003) (quoting 42 Pa.C.S. § 9542). As such, "[o]ur review is limited to the findings of the PCRA court and the evidence of record and we do not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error." **Benner**, 147 A.3d at 919 (quoting **Perry**, 128 A.3d at 1289). "Similarly, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record." **Id.**

On appeal, Appellant argues that he presented evidence to establish his innocence via Yvonne, "an exculpatory witness who saw the shooting and who testified that the shooter was not Appellant. The PCRA court's holding that Appellant 'baldly asserted his innocence, whereas the evidence conclusively proves otherwise,' is an abuse of discretion." Appellant's Brief at 56-57 (citations omitted).

As discussed *supra*, the PCRA court found Yvonne's testimony incredible, and we concluded that ruling was supported by the record. Accordingly, the PCRA court did not err in dismissing this claim.

<u>Closing the Courtroom</u>

Finally, we review Appellant's argument that the PCRA court abused its discretion in denying his claim that "closing the courtroom for the testimony of two Commonwealth witnesses violated Appellant's right to a public trial."

Appellant's Brief at 47 (citation omitted). Specifically, Appellant claims that trial counsel was ineffective for failing to object to the closing of the courtroom following an allegation of witness intimidation. *Id.* at 49, 51.

In *Commonwealth v. Penn*, 562 A.2d 833 (Pa. Super. 1989), this Court addressed the issue of witness intimidation as the basis for a trial court's decision to close a courtroom.

> Criminal trials in the United States have, by historical tradition, and under the First Amendment, been deemed presumptively open to public scrutiny and this ... presumption of openness inheres in the very nature of the criminal trial under our system of justice.
>
> ***
>
> The openness of criminal trials and the purposes which this openness is intended to serve, are protected not only by tradition, but by provisions in both the United States and the Pennsylvania Constitutions as well. *See* U.S. Const. Amend. 1; U.S. Const. Amend. 6; U.S. Const. Amend. 14; Pa. Const. Art. 1, sec. 7; Pa. Const. Art. 1, sec. 9; Pa. Const. Art. 1, sec. 11.
>
> ***
>
> Though the right to an open public trial is central to our system of criminal justice, the right is not absolute.
>
> ***
>
> This case involves an order which directed the court to be cleared during the testimony of a witness who was reported to have claimed that he was intimidated by unnamed persons who sought to prevent or alter his testimony against [a defendant]. In appropriate cases, full or partial closure of criminal proceedings may properly be granted in response to witness intimidation.
>
> ***

Succinctly, if the means of justice are to be preserved and the ends of justice protected, courts must exercise their discretion so as to dispel any belief that intimidation of victims or witnesses will serve the ends to which the intimidation is directed.

\*\*\*

However, a bald assertion of alleged intimidation does not justify the kind of encroachment on a defendant's Sixth Amendment right to a public trial which clearing the courtroom for a witness'[s] testimony entails. To the contrary, specific procedures designed to ensure a proper balancing of competing interests must be followed before even a partial closure for a single witness'[s] testimony may be ordered. …

The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

In the instant case, the trial court made no findings whatsoever regarding the nature, extent, or impact of the alleged intimidation on [the witness]. Rather than questioning [the witness] himself, the trial court relied entirely on the prosecutor's second-hand, hearsay, rendition of the allegations made by [the witness] in explanation of his failure to comply with the court's subpoena.

*Id.* at 835-38 (some citations and quotation marks omitted).

In **Penn**, this Court held that the trial court abused its discretion when it failed to examine the allegedly-intimidated person for itself in order to assess the person's credibility and determine the "nature, extent, and impact of any attempts to intimidate" the witness, **or** to "make specific factual determinations based upon sufficiently reliable information which would

support a conclusion that important interests existed which would justify the partial closure ordered." *Id.* at 839.

> While the right to a public trial may certainly bow to interests in protecting witnesses from injury or intimidation in **some** cases, such an encroachment on a defendant's rights requires, **at a minimum**, that the trial court first determine whether or not the threat of injury or intimidation in fact exists.

*Id.* (emphasis in original).

Also, this Court concluded that the trial court abused its discretion when it failed to consider alternatives to closing the courtroom or explain on the record why alternatives "would be impractical or inadequate to serve the interest(s) that closure of the trial during [the witness's] testimony was intended to protect." *Id.*

By way of background, it appears that immediately following Zahir's testimony on September 24, 2013, Zahir's mother, April Talley, allegedly was threatened because Zahir testified against Appellant. Concerned about the safety of Zahir's sister, Shanae, who was set to testify on September 25, 2013, the trial court held an in-chambers discussion with the prosecutor and trial counsel about closing the courtroom. N.T., 9/25/2013, at 2-8.[9] Trial counsel requested that the trial court warn the public that any intimidation would be referred to the prosecuting authority instead of closing the courtroom because "you give him a new trial if the public courtroom is

---

[9] Additionally, a discussion was held about not referring to Shanae as a police informant during direct or cross-examination.

closed." *Id.* at 8. The trial court disagreed, stating that it could close the courtroom with good reason, but that it would need to hear testimony from April first. *Id.* at 8-9. Trial counsel then changed course, advising the trial court that hearsay testimony from the officer who spoke to April would constitute a sufficient basis for the trial court to close the courtroom for the Commonwealth witnesses. *Id.* at 9-10. Thereafter, Officer Anthony Jackson testified that he was told by April that on the evening of September 24, 2013, unnamed individuals came to her house and told her that they were going to "fuck up" her son for testifying. *Id.* at 16-17. As a result of this threat, she relocated. *Id.* at 16. Based upon that testimony, the trial court closed the courtroom for the testimony of Shanae. The trial court also closed the courtroom for the testimony of Nyteisha because she lived in the same neighborhood and would similarly place Appellant at the shooting. *Id.* at 18-19. Trial counsel did not object.[10]

In denying Appellant's PCRA claim, the PCRA court found that trial counsel was not ineffective for failing to object because the objection would have been meritless. PCRA Court Opinion, 2/25/2019, at 21.

---

[10] Alternatively, Appellant argues that if this Court finds trial counsel did object, appellate counsel was ineffective for failing to raise this claim in Appellant's direct appeal. Because we agree that trial counsel did not object, we need not reach this alternate argument.

Here, [the trial c]ourt cleared the courtroom for the testimony of Zahir[11] [], Shanae [], and Nyteshia [] in the interest of safety. Th[e trial c]ourt only did so after hearing testimony from Officer Jackson that individuals had shown up at the house of [Zahir and Shanae's] mother, and threatened to physically assault [Zahir] if he testified. N.T., 9/25/2013[,] at 15-18.

As a result of the threats to the mother of two of the witnesses, th[e trial c]ourt ordered that the courtroom be cleared for the testimony of the three witnesses who placed [Appellant at] the scene of the shooting. In so doing, th[e trial c]ourt limited the risk that the news of their testimony would reach hostile persons. The basic guarantees of fairness, including the making of a record for a later review, were not infringed.

*Id.* at 21 (footnote omitted).

As in *Penn*, the trial court in the instant case did not interview the intimidated person. While the trial court in the instant case heard the testimony of the reporting police officer, the police officer's testimony about the threats was hearsay. Therefore, it was not sufficiently reliable information upon which the trial court could find that unnamed individuals threatened April. Thus, as in *Penn*, we conclude that the trial court abused its discretion when it closed the courtroom without questioning April to ascertain "whether or not the threat of injury or intimidation in fact exist[ed,]" and for failing to consider alternatives to closing the courtroom. 562 A.2d at 839.

---

[11] We note that the PCRA court states that it also cleared the courtroom for the testimony of Zahir. However, Zahir testified prior to the threat, and in fact, his testimony was the impetus for the threat. *See* N.T., 9/25/2013, at 2, 15-16.

Accordingly, we conclude that the underlying claim of error has arguable merit. In order to obtain relief on his ineffective-assistance-of-trial-counsel claim, though, Appellant must also establish that trial counsel's failure to object lacked any reasonable basis and that Appellant was prejudiced thereby.[12] **See Jones**, 71 A.3d at 1063.

Preliminarily, we note that no record exists as to whether trial counsel had a reasonable basis for not objecting to the trial court's closing of the courtroom. Once again, this dearth of record evidence is due to Appellant's choice not to present this evidence at the PCRA hearing, as discussed *supra*. **See** N.T., 9/19/2018, at 7-8.

As discussed *supra*, "a PCRA petitioner bears the burden of demonstrating counsel's ineffectiveness[,]" **Miller**, 212 A.3d at 1126 (citation omitted), and "[o]ur Supreme Court has articulated a strong preference that counsel be heard before being found ineffective[.]" **Durrett King**, 195 A.3d at 263 (citation omitted). Because Appellant had the opportunity to question trial counsel about his failing to object to the

---

[12] On direct appeal, when a defendant has been denied her right to a public trial, a new trial must be granted and no showing of prejudice is required because the violation is in "the nature of a structural error." **See Commonwealth v. Rega**, 70 A.3d 777, 786-87 (Pa. 2013) (citation omitted). When a defendant does not object at trial, that claim is waived for appellate review. **Id.** Thereafter, the only cognizable aspect of such a claim in the PCRA context is ineffective assistance of counsel, wherein a defendant must prove prejudice. **Id.** at 787. Because trial counsel failed to object, and the claim regarding closure is before this Court in the context of an ineffective-assistance-of-counsel claim, Appellant must prove prejudice.

closing of the courtroom at the PCRA hearing, but declined to do so, Appellant has failed to sustain his burden of proof. **_See Commonwealth v. Koehler_**, 36 A.3d 121, 146-47 (Pa. 2012) (rejecting ineffectiveness claim because PCRA counsel failed to question trial counsel at PCRA hearing regarding any potential reasons for the allegedly ineffective conduct). Accordingly, the PCRA court did not err in dismissing this claim.

### Conclusion

Based on the foregoing, we affirm the order of the PCRA court dismissing Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/28/2020