J-A04027-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| WILLIAM SMITH | : | |
| | : | |
| Appellant | : | No. 3158 EDA 2019 |

Appeal from the Judgment of Sentence Entered March 29, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004759-2015

BEFORE: STABILE, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KING, J.: **FILED: FEBRUARY 2/12/21**

Appellant, William Smith, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions for rape of a child, involuntary deviate sexual intercourse with a child, unlawful contact with a minor, aggravated indecent assault of a child, endangering the welfare of a child, corruption of minors, and indecent assault of a person less than 13 years old.[1] We quash the appeal as untimely.

The trial court opinion set forth the relevant facts of this case as follows:

> Complainant, S.H., was 9 or 10 years old when Appellant, her stepfather, first started having inappropriate contact with her. The first incident occurred while S.H. was taking a bath with her three turtles. Appellant entered and used

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3121(c), 3123(b), 6318(a)(1), 3125(b), 4304(a)(1), 6301(a)(1)(i), and 3126(a)(7), respectively.

the toilet, then took the turtles and put them on S.H.'s back, moving them to her buttocks. The incident stopped when S.H. said she was getting out. [S.H.] told her brother…about the incident. The next incident involved Appellant playing cards with S.H. in her bedroom. At some point Appellant put his penis in S.H.'s mouth.

On the next occasion, S.H. was on the living room floor, watching TV, when Appellant came and sat down next to her. Appellant removed S.H.'s shorts and underwear, and inserted his penis into her vagina, causing her pain. Appellant penetrated S.H. with his penis on other occasions.

On the next occasion, Appellant took S.H. for a drive, during which he pulled out his penis and put S.H.'s hand on it.

On another occasion, S.H. was in the kitchen doing dishes, when Appellant entered the kitchen, put his hand in her pants and started touching and penetrating her vagina.

On yet another occasion, S.H. was watching TV in her mother's room, while Appellant was present. Appellant removed S.H.'s pants and underwear and put his mouth on her genitals, penetrating her with his tongue.

At some point Appellant showed S.H. a phone photo he had taken of her sleeping, with her tights down and her buttocks exposed.

As a result of Appellant's behavior, S.H. started sleeping with her door locked so Appellant would not come in. Appellant removed the lock from the door. When she was 12 or 13 years old, S.H. started hiding down the street after school and waiting until Appellant left or her mother came home, before S.H. went to the house, in order to avoid being alone with him. On one occasion, S.H. started crying as her brothers were leaving to go play basketball. She asked her brother [D.] not to leave her there by herself.

In April of 2015, S.H. was with the daughters of her uncle's girlfriend, [M.] and [K.], whom she regarded as her cousins. She told [K.] and [M.] that Appellant had done something to her sexually. [K.] urged S.H. to tell her mother. They went to [M.'s] house, where S.H. texted her mother telling

her what happened. S.H. was crying in a room when [M.], [K.], and S.H.'s brother [N.] came in to ask what was wrong. S.H. just handed them the phone so they could read what she had texted her mother.

When S.H.'s mother came to pick her up and tried to ask what had happened, S.H. started crying. They went to S.H.'s grandmother's house, and S.H. told her grandmother about Appellant touching her.

On April 8, 2015, S.H. was interviewed at the Philadelphia Child Alliance (PCA). The interview was videotaped. S.H. was subsequently seen for an evaluation of child sexual abuse and underwent a complete exam by a nurse.

Dr. Maria McColgan testified as an expert witness for the prosecution in the area of child abuse and pediatrics. She testified that S.H. had suffered a penetrative trauma of the hymen, consistent with the possibility of penetration from a finger or a penis, which injury would cause a child to feel some pain. S.H. was tested and found to be positive for sexually transmitted diseases (STD) chlamydia and trichomoniasis.

S.H.'s mother had previously been diagnosed with STD trichomoniasis…. In March of 2015, S.H.'s mother went with Appellant to the hospital where he was treated for the same STD. In 2016, Appellant received medications which would be consistent with treatment for chlamydia and trichomoniasis.

Dr. McColgan opined that the evidence of infection of Appellant, S.H., and S.H.'s mother and, given S.H.'s pre-STD diagnosis report of penile to vagina penetration by Appellant, that penetration is the most likely source of S.H.'s STD infection.

(Trial Court Opinion, filed March 16, 2020, at 2-5) (internal citations omitted).

Procedurally, a jury convicted Appellant on September 27, 2017, of the above-mentioned crimes. The court sentenced Appellant on March 29, 2018, to an aggregate term of 21 to 45 years' imprisonment. On April 5, 2018,

Appellant filed a motion seeking a 30-day extension of time to file post-sentence motions. The court denied Appellant's request, but indicated that if Appellant timely filed post-sentence motions, then the court would grant Appellant leave to file supplemental post-sentence motions by May 9, 2018.

On Monday, April 9, 2018, Appellant timely filed post-sentence motions. Appellant timely filed supplemental post-sentence motions on May 3, 2018. On July 24, 2018, the court extended the time to decide the post-sentence motions by 30 days, due to the unavailability of necessary transcripts. The court denied post-sentence relief on September 7, 2018. In its order denying relief, the court expressly advised Appellant of his appellate rights. The trial judge signed the order denying the post-sentence motions, and the attached certificate of service indicates the order was served on defense counsel and the District Attorney by first-class mail. The certificate of service is signed by the judicial secretary of the trial judge. The order is also memorialized on the trial court docket.

On October 4, 2019, over one year after the court had denied post-sentence relief, Appellant filed a counseled notice of appeal.[2] On that same day, Appellant filed a "*praecipe* for entry of an adverse order." In his *praecipe* and notice of appeal, Appellant alleged that the order denying post-sentence relief was improper because the certificate of service was signed by the trial

---

[2] New counsel had entered his appearance on Appellant's behalf prior to filing the notice of appeal.

- 4 -

judge's secretary and failed to comply with the relevant rules of criminal and appellate procedure. Consequently, Appellant requested entry of an adverse order deeming Appellant's post-sentence motions denied by operation of law.

On October 9, 2019, the court struck Appellant's *praecipe* for entry of an adverse order, indicating that Appellant offered no authority to support filing a *praecipe* for the relief he sought. That same day, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant filed a motion requesting an extension of time, which the court denied on October 28, 2019. The court instructed Appellant to file his concise statement by November 1, 2019. On November 1, 2019, Appellant timely complied.[3]

Appellant raises ten issues for our review:

> When the judicial secretary to the sentencing judge mails an order purportedly pursuant to [Pa.R.Crim.P.] 114 but Philadelphia has no corresponding local rule, is a notice of appeal timely as long as the clerk never entered the order in the meantime?

> Where there was evidence that the complaining witness engaged in consensual sexual activity with other males and engaged in sexually explicit internet postings, was it error to prevent the introduction of such evidence and simultaneously to convict [Appellant] on evidence that he was the source of a sexually transmitted disease and that he removed the lock on her bedroom door?

> Did the court err in allowing testimony of which [A]ppellant

---

[3] On January 27, 2020, this Court issued a rule to show cause why the appeal should not be quashed as untimely. Appellant responded on February 12, 2020. On April 14, 2020, this Court deferred the issue to the merits panel.

had no notice, especially where the [C]ommonwealth later admitted that the statements were not found in the DHS records?

Did the court err in allowing Christian Dozier to vouch for the credibility of the complaining witness, both in portraying the [Philadelphia Children's Alliance] as a neutral factfinder and in bolstering and excusing the complaining witness's testimony in a way that does away with the law of prior inconsistent statements?

A.  Did the court err in denying [A]ppellant an adequate opportunity to challenge Dr. McColgan's qualification as an expert in refusing to permit [A]ppellant to explore how credibility assessments factor into the supposedly expert opinions offered?  B.  Did the court err in allowing Dr. McColgan to testify at all, for the reasons related to item no. 2 in this statement, but also because the defense was deprived of notice and an expert report, and related discovery violations?  C.  Did the court err in allowing Dr. McColgan to testify that [A]ppellant was the source of the disease that had been sexually transmitted to the complaining witness, both because she could not so state to a reasonable degree of certainty, and because [A]ppellant was prohibited from offering the obvious alternative explanation that one of the boys the complaining witness texted about could have been the source?

Did the court err in denying [A]ppellant's motions for a mistrial?

Did the court err in denying [A]ppellant's requests for jury instructions?

Did the court err in refusing to conduct a colloquy, or grant other relief, when juror number four stared at [A]ppellant and otherwise indicated he could not be fair?

Did the court impose an illegal sentence in open court, and in attempting to correct that error in the written sentencing documents outside the presence of [A]ppellant, deny him the opportunity to be present at sentencing in violation of his federal and state constitutional rights?  This includes the subsidiary issue that, to the extent that Pennsylvania

> caselaw holds that the written judgment of sentence governs the transcript of what happened at sentencing in open court, it violates a criminal defendant's right to be present for his sentencing[.]
>
> Did the court err in denying the post-sentence motion for the reasons stated therein?

(Appellant's Brief at 2-4).

In his first issue, Appellant argues that under Pa.R.Crim.P. 720(B)(3)(d), if a court denies post-sentence motions, "the order shall be filed and served as provided in Rule 114." (*Id.* at 9). Appellant asserts that Rule 114(B)(2) mandates that service is to be made by the clerk, "unless the president judge has promulgated a local rule designating service to be by the court or court administrator." (*Id.* at 11). Appellant claims that the First Judicial District has no such local rule. Appellant submits that there might have once been a practice in Philadelphia by which a judge's secretary could serve an order, but Appellant maintains such practice does not constitute proper service as required by Rule 114.

Under the relevant rules, Appellant submits the judicial secretary's service of the order denying post-sentence motions (instead of the clerk's) failed to satisfy the requirements necessary to constitute proper "entry" of an order. Appellant contends that the time for filing an appeal is measured from "entry" of the relevant order. Because Appellant insists the order denying his post-sentence motions was never "entered" in accordance with Rule 114, he suggests the September 7, 2018 order denying his post-sentence motions did

not trigger the appeal period.[4]

Alternatively, Appellant requests a remand for an evidentiary hearing to determine whether the electronic records of the district attorney show any evidence of an e-mail from the clerk on September 7, 2018 (the date the post-sentence motions were purportedly denied), and if the electronic records of the clerk show any outgoing e-mails (to the District Attorney and to Appellant's former defense counsel) on that date, allegedly serving the order denying post-sentence motions. Appellant concludes his appeal is timely,[5] and this Court should decline to quash the appeal. We disagree.

This Court has no jurisdiction to entertain an untimely appeal. ***Commonwealth v. Patterson***, 940 A.2d 493 (Pa.Super. 2007), *appeal denied*, 599 Pa. 691, 960 A.2d 838 (2008). Pennsylvania Rule of Appellate

_____

[4] Appellant also suggests the order denying post-sentence relief did not fully comply with Rule 720(B)(4), because it omitted the notice required by subsection (B)(4)(b). Nevertheless, Appellant does not provide the text of this subsection of Rule 720 or include any discussion of law interpreting it. Instead, Appellant merely indicates that he brought this defect to the attention of the court in footnote two of his *praecipe* for entry of an adverse order. Under these circumstances, this particular claim is waived. ***See Commonwealth v. Miller***, 212 A.3d 1114 (Pa.Super. 2019), *appeal denied*, ___ Pa. ___, 221 A.3d 643 (2019) (explaining general principle that this Court can deem issue waived on appeal where appellant fails to properly develop issue or cite legal authority to support contention in his appellate brief). ***See also Commonwealth v. Smith***, 955 A.2d 391, 393 n.5 (Pa.Super. 2008) (stating that this Court does not condone "incorporation by reference" to earlier filings).

[5] Appellant suggests the trial court lacked authority to strike his *praecipe* for entry of an adverse order, and his appeal properly lies from the date of the *praecipe*.

Procedure 903 provides: "Except as otherwise prescribed by this rule, the notice of appeal…shall be filed within 30 days after the entry of the order from which the appeal is taken." Pa.R.A.P. 903(a). Time limitations for taking appeals are strictly construed and cannot be extended as a matter of grace. *Commonwealth v. Valentine*, 928 A.2d 346 (Pa.Super. 2007). Generally, an appellate court may not enlarge the time for filing a notice of appeal. Pa.R.A.P. 105(b). Thus, an untimely appeal must be quashed. *Commonwealth v. Crawford*, 17 A.3d 1279 (Pa.Super. 2011).

Pennsylvania Rule of Criminal Procedure 720 provides, in pertinent part:

**Rule 720. Post-Sentence Procedures; Appeal**

**(A) Timing.**

(1) Except as provided in paragraphs (C) and (D), a written post-sentence motion shall be filed no later than 10 days after imposition of sentence.

(2) If the defendant files a timely post-sentence motion, the notice of appeal shall be filed:

   (a) within 30 days of the entry of the order deciding the motion;

   (b) within 30 days of the entry of the order denying the motion by operation of law in cases in which the judge fails to decide the motion; or

   (c) within 30 days of the entry of the order memorializing the withdrawal in cases in which the defendant withdraws the motion.

* * *

**(B) Optional Post-Sentence Motion.**

- 9 -

\*    \*    \*

(3) *Time Limits for Decision on Motion*. The judge shall not vacate sentence pending decision on the post-sentence motion, but shall decide the motion as provided in this paragraph.

    (a) Except as provided in paragraph (B)(3)(b), the judge shall decide the post-sentence motion, including any supplemental motion, within 120 days of the filing of the motion. If the judge fails to decide the motion within 120 days, or to grant an extension as provided in paragraph (B)(3)(b), the motion shall be deemed denied by operation of law.

    (b) Upon motion of the defendant within the 120-day disposition period, for good cause shown, the judge may grant one 30-day extension for decision on the motion. If the judge fails to decide the motion within the 30-day extension period, the motion shall be deemed denied by operation of law.

    (c) When a post-sentence motion is denied by operation of law, the clerk of courts shall forthwith enter an order on behalf of the court, and, as provided in Rule 114, forthwith shall serve a copy of the order on the attorney for the Commonwealth, the defendant's attorney, or the defendant if unrepresented, that the post-sentence motion is deemed denied. This order is not subject to reconsideration.

    **(d) If the judge denies the post-sentence motion, the judge promptly shall issue an order and the order shall be filed and served as provided in Rule 114**.

Pa.R.Crim.P. 720(A)(1)-(2), (B)(3)(a)-(d) (emphasis added).

Pennsylvania Rule of Criminal Procedure 114 provides, in pertinent part:

**Rule 114. Orders and Court Notices: Filing; Service; and Docket Entries**

**(A) Filing**

- 10 -

(1) All orders and court notices promptly shall be transmitted to the clerk of courts' office for filing. Upon receipt in the clerk of courts' office, the order or court notice promptly shall be time stamped with the date of receipt.

(2) All orders and court notices promptly shall be placed in the criminal case file.

**(B) Service**

(1) A copy of any order or court notice promptly shall be served on each party's attorney, or the party if unrepresented.

**(2) The clerk of courts shall serve the order or court notice, unless the president judge has promulgated a local rule designating service to be by the court or court administrator**.

Pa.R.Crim.P. 114(A)-(B)(1)-(2) (emphasis added).

Philadelphia County Local Rule 105 states: "The term 'local rule' shall include General Court Regulations and Administrative Orders issued by the Administrative Judge of the Trial Division and President Judge of the Court of Common Pleas." Phila.Co.Crim.Div.R. 105. Additionally, the Pennsylvania Bulletin sets forth Philadelphia County's General Court Regulation No. 2007-01, effective December 1, 2007, as follows:

**Title 249—PHILADELPHIA RULES**

**General Court Regulation No. 2007-01; Service of Orders and Notices as Provided in Pa.R.Crim.P. No. 114**

Pennsylvania Rule of Criminal Procedure No. 114 provides that the clerk of courts shall serve on each party's counsel or the party, if unrepresented, all orders and court notices unless the president judge has promulgated a local rule designating service to be by the court or court

administrator.

> In Philadelphia County, by custom and long-standing local practice, due in part to the [c]ourt's extensive case-load, service of notices and orders has been effectuated not by the Clerk of Quarter Sessions, who is the clerk of court, but by the [c]ourt through various court offices, officials and employees of the First Judicial District of Pennsylvania.
>
> **Accordingly, as authorized by Pennsylvania Rule of Criminal Procedure No. 114, employees of the First Judicial District are authorized to continue to serve notices and court orders on each party's counsel or on the party, if unrepresented.** The employee of the First Judicial District who serves a particular notice or order shall make a notation on the notice, order, docket or other location concerning the date and manner served.
>
> This General Court Regulation issued in accordance with Pa.R.Crim.P. 114, will become effective immediately. As required by Pa.R.Crim.P. No. 105, the original General Court Regulation will be filed with the Prothonotary in a Docket maintained for General Court Regulations issued by the President Judge of the Court of Common Pleas of Philadelphia County, and with the Clerk of Quarter Sessions.
> …

37 Pa.B. 6262, General Court Regulation No. 2007-01 (emphasis added). This regulation bears the signature of the then-President Judge.

Instantly, the court sentenced Appellant on March 29, 2018. Appellant timely filed post-sentence motions on Monday, April 9, 2018. **See** Pa.R.Crim.P. 720(A)(1). **See also** 1 Pa.C.S.A. § 1908 (stating: "Whenever the last day of any [computation of time] period shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation"). With the court's permission, Appellant timely filed supplemental post-sentence

- 12 -

motions on May 3, 2018. On September 7, 2018, the court denied Appellant's post-sentence motions. Appellant's notice of appeal was due 30 days later, by October 7, 2018. *See* Pa.R.A.P. 903(a). Appellant did not file his notice of appeal until October 4, 2019, which is patently untimely.

Although Appellant insists service of the order denying post-sentence relief by the trial judge's secretary failed to satisfy Rule 114, Philadelphia County's General Court Regulation No. 2007-01 belies Appellant's claim. That regulation, deemed a "local rule" and signed by the then-President Judge, expressly permits employees of the First Judicial District to serve notices and court orders in accordance with Rule 114. *See* Pa.R.Crim.P. 114(B)(2); Phila.Co.Crim.Div.R. 105. *See also* 37 Pa.B. 6262, General Court Regulation No. 2007-01. Therefore, we cannot agree with Appellant's position that the order denying post-sentence relief was never "entered" to trigger the appeal clock.[6] Accordingly, Appellant's appeal is untimely and we quash the appeal.[7] *See Crawford, supra*.

Appeal quashed.

---

[6] Appellant seems to suggest that this regulation is no longer in effect because he could not locate it on the "web site's current compendium of local rules" (*see* Appellant's Brief at 12 n.7), but he cites no law in support of that contention. *See Miller, supra*.

[7] Based on our disposition, we deny Appellant's request for alternative relief and decline to reach his remaining appellate issues.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>2/12/21</u>